## MILES v INDUSTRIAL COMMISSION

Ohio Appeals, 2nd Dist, Franklin Co

No 2723. Decided Nov 14, 1936

Donald J. Hoskins, Prosecuting Attorney, Columbus, and Joseph E. Bowman, Asst. Pros. Atty., Columbus, for appellant.

Forest F. Smith, Columbus, and Ralph C. Smith, Columbus, for appellee.

### OPINION

By BARNES, PJ.

The above-entitled cause is now being determined on defendant's appeal on question of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

On and before January 21, 1935, Arthur Miles, late husband of appellee, Eva P. Miles, was an employee of the Union Fork and Hoe Company, of Columbus, Ohio. The Union Fork and Hoe Company was on and prior to January 21, 1935, an employer within the meaning of the Workmen's Compensation Act of Ohio and had complied with the provisions of the Act. At about 2:30 P. M., on January 21, 1935, Arthur W. Miles was following his usual duties of loading bundles of forks, hoes, rakes, etc., into vans and box car at the warehouse dock of his employer.

His immediate superior was Norman Karnes, who had the title of shipping clerk. At about 2:45 P. M., of this day, the employe, Arthur W. Miles, approached his superior, Mr. Karnes, and reported that while he, Miles, was loading a van he took a pain in his left chest with the result that Mr. Karnes for the rest of the afternoon did the actual carrying of the bundles of hoes, forks or rakes, and the employe, Mr. Miles, did the checking. From time to time Mr. Karnes made inquiry as to whether or not he was still suffering pain, and in each instance received the information that there was no letup. The usual shipping bundles weighed anywhere from 3 to 55 pounds, but there was no evidence as to the weight of the bundles carried by the employe, Miles, previous to his report of pain in his chest, except as contained in the testimony of the attending physician wherein the statement of the employe Miles was repeated, giving the weight at 20, 25 or 30 pounds. The shipping clerk, Mr. Karnes, took the employe, Miles, home in his car after the

day's work was over, but this was following a usual and frequent custom. On the way home Karnes made further inquiry and Miles repeated that he still had the pain in his chest.

On arriving at his home, Mrs. Eva P. Miles, the wife, at once noticed that something was wrong from the pale appearance and his bent-over posture holding his chest. She assisted in the removal of his coat. Very naturally, she was concerned and made detailed inquiries as to what was the matter. He replied that he was sick, and over the objection of the State, she proceeded to give her husband's narrative of an accident herein quoted in full:

"Well, when I asked him what the trouble was he said that about 2:30 he was loading a car of hoes and that he slipped and in trying to catch himself he felt an awful pain in his chest and at the same time he broke his wrist watch."

Within an hour a physician was called, who at once diagnosed the condition as a collapsed lung and the patient was hurried to the hospital where Dr. Carl A. Hyer was called in consultation. The condition of Mr. Miles was recognized at once as critical, and he died on the following morning, following which an autopsy was had, the attending physicians, Dr. T. C. Allensbach and Dr. Carl A. Hyer, being present.

Dr. T. C. Allensbach was the first physician called and he first attended the patient at his home, and then later ordered his removal to the hospital. Dr. Allensbach in his testimony was inquired of, and, over the objection of the state, repeated what the patient told him concerning an accident and attendant pain immediately afterwards. The State, through its counsel, saved its exceptions to the overruling of the objections to the question and also to the overruling of motion to rule out answer. The testimony of Dr. Allensbach on this question is set out in full:

"Well, frankly, I thought it was a collapsed lung at first. I don't know why I had that idea, I just had begun practice, and had never seen a case that the symptoms were so striking, so that I inquired, still with the idea in mind of eliminating the possibility of a pneumonia or something else of more insidious onset, I inquired of him whether he had been in good health that morning and he answered yes, his health had been absolutely unremarkable until that morning, he had had no

cold; then I asked him just what time, in an effort to discover whether this thing was instantaneous in onset, I asked him to tell me at just what time this occurred, and he said 'This afternoon', I have forgotten the exact hour which he stated. So then I asked him what were he doing just at the time this happened, and he had previously stated it had begun with sudden sharp lancinating pain in his right chest and he said he had been engaged in lifting bundles of hoes, I think it was, at work. I asked him how heavy these were and he replied, oh, twenty or twenty-five pounds, they vary somewhat, and I expressed some doubt as to whether a bundle of such comparatively light weight could cause him any pain and he said ordinarily not, but that he had somehow—here I am not quite clear, but he said he had lost his footing or had slipped, but it carries in my mind that he said from the legal involvements at that time that his foot slipped and in his effort to regain his balance he had not fallen, but he experienced what he thought at the time was a catch in his side."

The record presents no evidence of an accident other than the statements by the decedent, first to his wife, and afterwards to Dr. Allensbach, each of which statement is quoted in full.

Previous to this pain in the chest the decedent was apparently working alone, or, at least, no other employe was called to testify other than the shipping clerk, Mr. Karnes, and he was not present when the alleged slipping took place. The shipping clerk, Karnes, was asked specifically as to whether or not the decedent made any statement to him about having slipped, and his reply was that he had not. The only other witness narrating any statement made by the deceased was Dr. Hyer, here presented in full:

"Mr. Miles stated that he was working at the Union Fork & Hoe, that he had lifted some fork or hoe handles, I don't know, at approximately 2:30 in the afternoon and he had a sudden sharp pain in the right chest, that he had continued to work the rest of the afternoon with pain until closing time and had gone home and because of the pain had called Dr. Allensbach who saw him and admitted him to the hospital."

After the death of decedent, appellee, Eva P. Miles, on February 4, 1935, made application to the Industrial Commission for compensation on account of the death of

**458**

her husband, claiming that during the time he was an employe of the Union Fork & Hoe Company as shipping clerk, and that on January 21, while lifting a bundle of hoes his foot slipped and in trying to catch himself from falling, he got a sudden pain in his right side, like someone stabbing him in the chest.

On the 4th day of May, 1935, the Commission denied the same on the ground that the proof failed to show decedent's death was the result of an injury sustained in the course of or arising out of employment. Then following a rehearing and final denial by the Commission when it disclaimed jurisdiction.

Within the statutory period an appeal was taken to the Common Pleas Court, and there a verdict was returned by the jury in favor of the claimant upon which, after overruling motion for new trial, judgment was entered.

The motion for new trial sets out the following claimed errors:

1. Defendant's rights were prejudiced by the erroneous admissions of evidence by the court.

2. The court erred in overruling defendant's motion for a directed verdict at the conclusion of all the evidence.

3. Said verdict was contrary to law.

In the brief of counsel for the State these several grounds of error are presented and discussed as one, grounds 2 and 3 being based principally on the ruling of the trial court on the admission of testimony. It is insisted very strenuously that the action of the trial court in permitting the wife to repeat and narrate the statements of her husband as to his slipping, attended by pain in the chest, constituted prejudicial error.

Counsel for the complainant urge that the evidence was properly admitted on the ground that it was a part of the res gestae. Many reported cases are cited pro and con.

We recognize that in recent years there has been a strong tendency to admit declarations of the decedent employe in Industrial Commission cases, for the reason that it frequently happens no evidence of the accident could otherwise be presented. We find this very manifest in the reported cases of various Courts of Appeals in the State, including our own. In some instances the extension of the rule was said to be justified on the theory that the Workmen's Compensation Act contained the provision that strict rules of evidence would not be required in the administration of the Act. In practically all of these announcements,

always admitting evidence on the principle of res gestae, it would be very hard to reconcile them with the earlier decisions of the Supreme Court defining and giving application to the term. One of the earliest cases wherein the principle of res gestae was discussed and given application was the **Cleveland, Columbus & Cincinnati Railroad Company v Mara, 26 Oh St 185.**

Considering the question in the light of some recent decisions of the Supreme Court, we are forced to the conclusions that the evidence in the instant case was improperly admitted.

The statement lacked the element of spontaneity, which is now recognized as necessary in determining whether or not declarations or statements are part of the res gestae. In the instant case the statement was made some two hours and a half after the alleged accident, at which time the decedent was answering the query of his wife as to the cause of his sickness. It shall not be our purpose to quote, but we merely cite the decisions of the Supreme Court which we think support our present conclusion:

**The Cleveland Railroad Company v Merk, 124 Oh St 596;**

**Weaver v Industrial Commission of Ohio, 125 Oh St 465;**

**Coutillier et v Industrial Commission of Ohio, 126 Oh St 546.**

We have no difficulty in arriving at the conclusion that the trial court was in error in permitting the wife to testify as to what her husband told her about slipping.

The next question presented is whether or not the error thus found was prejudicial.

Counsel for the claimant urge that even if this evidence should be found to be improperly admitted, yet the verdict and judgment should be sustained on the ground that other uncontradicted evidence furnishes the requisite proof.

This principle of law is well recognized, although it can not be extended to the point claimed by counsel for the complainant. The rule is correctly stated in **2 Ohio Jurisprudence, 706, at page 833**, as follows:

"The introduction of incompetent and illegal evidence by the prevailing party will not compel reversal of the judgment if the adverse party could not have been prejudiced thereby because other evidence properly admitted necessarily gave a right to the judgment rendered, or because there was sufficient competent evidence to fully

sustain the verdict or finding upon the point to which the incompetent evidence relates."

In the instant case we searched the record as to what, if any, other competent evidence necessarily supports the verdict. The evidence of Dr. Allensbach is not supporting, for the reason that objections were made and exceptions saved to his narrative of what the deceased told him as to his slipping and so forth.

This evidence was erroneously admitted. The shipping clerk, Karnes, was not told by the decedent that he had an accident through slipping. Neither was this statement made to Dr. Hyers. It therefore follows that there is an entire absence of any direct testimony of an accident.

We find from the record that Doctors Allensbach and Hyers gave minute testimony as to their findings through the autopsy.

While all other testimony was very positive to the effect that the decedent had never previously had any sickness or ailment, yet the autopsy disclosed that there had been a pulmonary trouble of some character, leaving a scar on the left lung.

There was disclosed a tear at or near this scar from which blood and fluid were emitted, thus causing the lung to collapse. The presence of a fresh tear in the lung suggests trauma, and both physicians testified that in their judgment there was trauma. However, they give other means by which this tear might have occurred, for instance, coughing or a sudden pressure through the circulatory system.

We are now confronted with the question as to what our judgment should be. If there is evidence direct or circumstantial coupled with the permissible inferences that there was an accidental injury, then the case should be remanded for new trial with the direction that the trial court eliminate if objected to the evidence heretofore referred to as not being a part of the res gestae.

There then remains this evidence touching the question of trauma. The statement made by Miles immediately following his complaint of pain was a part of the res gestae and supports the requisite issue that whatever occurred, occurred in the course of his employment. According to the testimony of the superior, the employee gave no information to him that he slipped while he was carrying the bundle of tools. Thus far there would be no evidence of trauma. However, this employee died within a day and there followed immediately a post mortem. The physicians conducting the post mortem both of whom had been attending physicians prior to the death of the employee gave detailed evidence of what they found. They each had diagnosed prior to death a collapsed lung and this they found after their post mortem. Evidence was also presented of a fresh tear in the lung tissue. Both physicians gave their opinion that the tear in their opinion was produced by trauma. However, Dr. Allensbach's testimony is so tied up with the history of the case that his testimony becomes inadmissible. By the objectionable history of the case, we mean wherein he considers what was told him by the employee relative to his slipping. So far as the record discloses, the testimony of Dr. Hyer is not based on this history of slipping. Therefore there is presented in the record, through the testimony of Dr. Hyer, evidence of trauma disconnected with the history of a slipping. Dr. Hyer gives this expert evidence from the fresh tear he found in the lung following the post mortem.

He narrates other situations than trauma that might be responsible for the torn condition found, but on the final analysis it is his expert judgment that the tear was attributable to trauma.

Trauma as here used would be synonymous with the term 'accidental injury'. Under all the evidence, we think it is a jury question to determine whether or not there was an accidental injury from which the employee subsequently died.

As the case comes to us we are not in position to say that the verdict of the jury would have been the same had the evidence improperly admitted been rejected.

We therefore conclude that the judgment of the trial court should be reversed and the cause remanded for further hearing. Entry may be drawn accordingly.

HORNBECK and BODEY, JJ, concur.