## JOHNSON v INDUSTRIAL COMMISSION

Ohio Appeals, 2nd Dist, Franklin Co

No 2956. Decided Nov 17, 1938

James F. Henderson, Columbus, for appellee.

Ralph J. Bartlett, Prosecuting Attorney, Columbus, David B. Sharp, and Edmund B. Paxton, Assistant Prosecuting Attorneys, Columbus, for appellant.

## OPINION
By THE COURT

The appellee filed his petition in the Court of Common Pleas alleging that on August 22, 1935, while working for the Timkin Roller Bearing Company, Columbus, Ohio, and in the performance of his duties as such employee, by reason of slipping on the floor near a machine upon which he was working, his left thumb was bruised and lacerated, which injury was immediately treated by the plant doctor, and received several treatments prior to September 2, 1935, which was Labor Day. It is alleged that while said wound was still in the process of healing a substance in said thumb wound broke off getting into the blood stream, going along the blood stream to the brain, causing a hemorrhage, and said hemorrhage causing a paralyzed condition of the left side of his body, which still continues, and that said paralyzed condition is permanent and the injury to the thumb was the proximate cause of said hemorrhage and paralysis.

The claim was presented to the Industrial Commission of Ohio and rejected.

Plaintiff prays the jury determine his rights.

The Industrial Commission answered admitting certain facts, including those necessary to give the court jurisdiction, but denying other allegations. The case was

submitted to a jury upon the evidence taken before the commission and proper instruction of the court. The defendant interposed motions for a directed verdict, which were overruled. The jury found in favor of the plaintiff. A motion for new trial was overruled. And the case appealed to this court.

There are three assignments of error to the effect that the verdict is against the weight of the evidence, and that the court overruled the defendant's motions for directed verdict.

The bill of exceptions disclosed all the evidence presented, which may be briefly summarized as follows: The appellee while in the course of his employment sustained the injury complained of, to the left thumb; this was treated and the appellee worked every day for a week that the shop was open, performing his regular duties; on September 2, 1935, he and his family made a trip to the country to visit and dine with relatives. In the afternoon of that day appellee became suddenly ill and suffered a paralytic stroke of the left side, which has disabled him from performing any work, and is probably a permanent condition.

There are a number of lay witnesses who testified, whose evidence is not in harmony, some testifying that the man for many years worked at the factory without any indication of any illness or physical trouble; others, including the nurse at the factory, testified that he frequently called for the administration of medicine on account of nervousness and headaches. There is also a variance of testimony in reference to the injury of the thumb, some describing it as a slight laceration of no particular consequence and others designated it as a mashed thumb; some evidence tends to prove that it was completely healed in a few days, and other evidence that it was in a festered and inflamed condition on September 2, 1935, and was not completely healed until a month after the appellee suffered the stroke. There is also lay evidence to the effect that on the afternoon of the stroke the appellee complained of pain in the thumb and in his shoulder. The first evidence of the stroke appeared while appellee was sitting in a chair in the kitchen where he was visiting; it was indicated by distorted muscles of the face and other evidences of a paralytic stroke. Appellee was immediately attended by a physician and later in the day received further attention from a second physician. There is medical testimony indicating that he had been treated for some time for his complaint of dizziness and headaches, and it appears that his blood pressure was somewhat higher than that normal for a man of his age. The physician, Dr. Hopkins, making the first examination thought possibly his paralytic condition was due to an embolus defined to be some foreign material that gets into the circulation and lodges some place, cutting off the circulation. The doctor testified that the only cause for the embolus that he could see was the condition of the thumb.

The solution of the case must depend upon the testimony of the physicians. The verdict must be supported by some competent statement that the paralytic condition resulted from the injured thumb.

The paralysis manifested itself on the left side, and affected the arm, leg, face and the speech. The doctor traced the circulation of the blood from the extremity, stating that from the thumb it goes through the venous circulation to the right side of the heart, and from there to the lungs, where the blood is filtered and returns to the heart, and is from there sent to the arteries and to the brain, and any substance having its origin in the injured thumb and getting into the blood stream would have to travel through the heart and the lungs and back to the heart before it reached the brain. The usual cause of paralysis is the rupture of the arteries of the brain, due to high blood pressure and arteriosclerosis.

The question for us to determine is whether or not the evidence of the physicians is such as to support the conclusion that the paralysis was proximately caused by the injury of the thumb, or that reasonable minds might differ as to the cause.

Doctor Hopkins, who attended the plaintiff immediately after his stroke, testified that he determined from the examination and treatment the cause of the patient's paralytic condition, stating—"Well, I thought possibly it was due to an embolus * * * some foreign material that gets in the circulation and lodges some place, shutting off circulation." He further testified—

"Q. Did you see any casual connection between the injured thumb and this paralyzed condition? A. Yes, there could be. Q. What? A. This could be the course (cause) of the embolus, the thumb."

The only cause Doctor Hopkins could see for the embolus was the thumb. Doctor R. W. Hoffman, being inquired of through a hypothetical question as to whether he could see any causal connection between the injured thumb and the condition of

the patient, stated—"I can answer the question but I think it is not fair, I think there is a connection." In giving the explanation of his conclusion, he cited an instance of a friend who had a sore thumb and at the same time a gastric ulcer, stating—"I believe there could be a connection here; it is not the usual thing."

Being inquired of—"Q. But in your opinion, Doctor, there is a causal connection between the thumb that was injured and the part of his body as has been stated in the hypothetical question?" "A. I think there is a connection."

The doctor was cross-examined as to the possible effect of high blood pressure in causing paralysis.

Doctor McCurdy, a physician for the Industrial Commission of Ohio, testified— "Q. Doctor, could an embolus be turned loose in the body from a mashed and lacerated thumb that would become infected?"

"A. I have never seen it, but I suppose such a thing is possible."

Doctor Thomas testified that the most common cause of a stroke of paralysis is a general arteriosclerosis or hardening of the arteries, but that he had not found any evidence of this condition in appellee. Doctor Thomas also related the fact that Johnson had complained of and had been treated for nervousness and headaches. Doctor Thomas in answer to a hypothetical question reciting the condition of Johnson, and specifically being asked if he had an opinion as to whether there was any connection between the laceration of the left thumb and the hemiplegia which was diagnosed on September 2, 1935, stated—"A. My opinion is there would be no connection whatsoever with such a small laceration and the fact that there was no artery and no veins severed and ligations, and the fact this started with twitching of the face, and later progressed down the body, indicates there was a ruptured cerebral artery and it was of a slow, seeping nature and progressive. If the laceration could have been responsible in the nature of an embolism it would either lodge as a pulmonary infract and produce sudden death and if it went up to the cerebral arteries it would produce a very sudden paralysis and not of a slow nature, and these cases of embolism usually die immediately."

The court in overruling the motion for new trial commented upon the medical testimony, particularly that of Docotr Hoffman, in which he says that he "thinks" there was a connection between the injury of the plaintiff and the plaintiff's disability The court held that this expression is tantamount to the statement that the witness is of the opinion that there is a causal connection.

If Doctor Hoffman had rested his statement with—"I think there is a connection," his testimony would have been more impressive than it is after he makes the explanation in reference to the doctor who had a sore thumb and a gastric ulcer at the same time, as appears on pages 38 and 39 of the record. On pages 41 and 42 Dr. Hoffman disclaims that he is an expert on "strokes" and so further weakens his opinion as expressed above.

The most favorable construction of the testimony is that some of the doctors stated it is possible that there was a causal connection between the sore thumb and the paralytic condition, and one doctor states positively—"I think there is a connection."

We recognize the fact that as a reviewing court we should not interfere with the proper function of the jury or of the trial court, but we also recognize our obligation to reverse the lower court if in our judgment there is no evidence supporting the claim that the wounded thumb was the proximate cause of the paralytic condition.

We think the case falls within the principles laid down in **Ind. Comm. of Ohio v Lathrop, 52 Oh Ap 55.**

In case at bar there is no evidence in the record to indicate a proximate causal connection between the injury and the paralytic condition.

As stated in the Lathrop case—

"The evidence was that it could have been a cause, but there was no evidence that it was the cause."

The judgment of the Court of Common Pleas is reversed, and final judgment is entered in favor of the defendant-appellant.

BARNES, PJ, and GEIGER, J, concur.
HORNBECK, J, dissents.

### DISSENTING OPINION

By HORNBECK, J.

I cannot subscribe to the finding that the plaintiff made no case to go to the jury, though it is not especially strong and the plaintiff's doctors were not very forceful or effective in their testimony and one of them, Dr. Hoffman, with modesty that we do not ordinarily associate with the expert, undertakes to question his own qualifications. However, while his special-

ity is in another field of the medical profession, yet he, as a duly admitted physician was competent to express an opinion upon the issue for determination. He did express such an opinion and it is my judgment, as it was of the trial judge, that his statement was strong enough to permit the conclusion that in probability plaintiff's injury was caused in the manner claimed by him.

Dr. McCurdy testifying for the defendant on cross examination said that although he had not seen an embolus turned loose from a mashed and lacerated thumb he supposed such a thing possible.

On fair consideration of the whole record it is my opinion that the verdict is not sustained by and was against the manifest weight of the evidence but that will not permit us to determine that the case should have not gone to the jury and our power is exhausted when we have remanded the case for new trial. It may be that such action would be tantamount to the entering of final judgment but the differences between the action taken by the majority and the action required in remanding for new trial is such that the benefit of it, no matter how slight, should not be taken away from the plaintiff.

The trial judge, as shown from the record, had full appreciation of the law pertinent to the question presented and in my judgment reached the proper determination on the motions for directed verdict.