## BOZE v INDUST. COMM.

Ohio Appeals, 2nd Dist, Miami Co.

No. 396. Decided July 8, 1940.

Joseph W. Sharts, Dayton, and Baird Broomhall, Troy, for plaintiff-appellant.

Thomas J. Herbert, Attorney General, Columbus, E. P. Felker, Asst. Atty. General, Columbus, Thomas F. Joseph, Asst. Atty. General, Columbus, for defendant-appellee.

### OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment in favor of de-

fendant-appellee upon an instructed verdict at the conclusion of plaintiff's case in chief.

Plaintiff's claim was for an award from the Industrial Commission because of the death of her husband, Roy Boze, which, it was asserted was the result of an injury received in his course of employment with the Piqua Box Company, a subscriber to the Workmen's Compensation Fund.

There are four errors assigned,

(1) The action of the trial judge in sustaining the motion of defendant for directed verdict.

(2) In failing to sustain plaintiff's motion for new trial.

(3) In refusing to admit certain testimony offered by plaintiff.

(4) In admitting certain evidence offered by defendant over plaintiff's objection, being State's exhibits, one to five inclusive.

The facts essential to an appreciation of the errors assigned are, that for many years prior and on December 23rd, 1936, plaintiff's decedent had been in the employ of the Piqua Paper Box Company. On the date of his injury, December 22nd or 23rd, he had gone in a truck to an old building which was used for storage by his employer for the purpose of locking the door of the building. It was testified by Robert Knight, a young man who was with Mr. Boze, that "He just had his hand on the door and dropped the keys and he went to pick them up and while he was picking them up a plank fell down and hit him on the back of the head". "The plank was about six feet long. There was a truck sitting there and he sat down on it and rested a little and rubbed the back of his head." He remained in this position at this place for four or five minutes when he left and the young man locked the door for him and they left together, the young man going to Mr. Boze's home. Knight states that he went over to Mr. Boze's home after supper the day of his injury and he was lying in bed when Knight went in and that he was there with him about all the next day; that he saw Mr. Boze working at 3 o'clock the next afternoon and on the day before

Christmas he did not work as fast as he usually did. On Christmas Eve he again saw Mr. Boze at his home in bed between 8 and 8:30 o'clock. He procured some salve for Mr. Boze and saw him stand in front of the dresser and rub it on the back of his neck. Mr. Boze worked on the morning of December 26th but would sit down and rest once in a while. The witness again saw Mr. Boze at his home on Sunday, January 3rd. He was then in bed. The witness remained with him about all afternoon, saw him again on January 4th, at noon. Mr. Boze died on the 4th of January.

It also appears from this witness that Mr. Boze had a cold with a bad sore throat of two or three days duration before he died.

Eddie Walker, a fellow employee of Mr. Boze, testified that on Sunday, January 3rd, Mr. Boze came to work and that about 10 o'clock at night he observed that he,

"Took a pain here (indicating back of neck) and grabbed down here in his stomach. He went down on one knee and I and Clarence Bell picked him up and put him on a carton over there. He just kept on getting worse. He couldn't hardly work—we carried him over and sat him down in a chair and he sat there five minutes and he kept going like this (indicating grabbing stomach) so Gerald took him home in the truck. When I next saw him he was dead."

Nellie Boze, widow of decedent, testified that her husband had not lost a day's work in fourteen years up to the time of his death; that he did not have a severe cold during the week before his death; that when he came home on the night after he had been struck on the back of the neck with the board he came in, sat down in a rocker, kept his top coat and hat on, ate no supper but drank his coffee, went to work in the evening, came home a little earlier than usual. She went next door to call a doctor. Her neighbor, Mrs. Knight, came over and stayed until 11 o'clock, at which time Mr. Boze had gotten some relief. They had put

hot cloths and water to the back of his head and Mrs. Knight had rubbed liniment there which relieved him a little. He rested fairly well that night. During the Christmas rush he would come home at noon and at supper time and rest until time to go back to work. He would rub his head with liniment and hold his head. He did not sleep at night, went home early Christmas Eve, was up and down all night, remained in bed all of Christmas day, suffered with his head, was very sick January 3rd and died on January 4th.

A son, Roy V. Boze, saw his father on Wednesday following Christmas week, had conversation with him on Sunday, January 3rd. When the doctor came in his father was crying and was paralyzed entirely in both legs and feet. A daughter, Virginia Boze, testified that she remembers on Christmas eve her father rubbing the back of his head and neck after he came home; that when he would come home at night he would have trouble with his head. He moaned and kept awake most of the night.

There is some further lay testimony, largely cumulative in character. A Doctor Joseph E. Bausman was the only medical witness offered. He said that the cause of Mr. Boze's death was encephalitis, which is an inflammation of the nerve tissue about the head or spinal medial. Some of the causes are syphilis, infections of any kind, direct trauma to the brain. This question was put to the witness,

"Q. Would you say from your experience and knowledge of medicine that a blow on the back of the head with a piece of timber, * * *, could have caused and brought on the condition you found him to be in? That is, if the facts were that Roy Boze had stooped down to pick up some keys and while in that stooping position a piece of timber six or seven feet long and either two by four or two by six came down and struck him across the head near the neck, on the afternoon of December 22nd or 23rd; and after he came home his wife made an attempt to call you for aid and one of the neighbors proposed that she use liniment first, which was done, and then he continued to complain with the back of his head until the time that you saw him on January 3rd and found him in the condition you found him in?
A. If the piece of timber had fallen any considerable distance, yes. By that I mean that it was quite possible. Even a light blow can produce injury internally in the skull."

And further along on cross examination this question,

"Q. You don't claim to state at this time as to the cause of encephalitis?
A. I did not know at the time of death that this man had an injury. It is my opinion that the more logical explanation of the cause of death was the blow on the back of the head and the resulting encephalitis from that."

The witness further stated that he had treated Mr. Boze in September, 1935 for urethritis but that in his judgment there was no relation between this infection and encephalitis and that it did not require Mr. Boze to lay off of work. He said that if there were pus pockets about the teeth that would produce a pyemia that would cause encephalitis but there was no showing that his teeth were affected in any manner whatever; that he did not think a syphilitic condition of the spinal column or brain could have caused this condition from which Mr. Boze died and that there is no showing of a syphilitic affection; that if Mr. Boze had a serve cold and pain in his head and sore throat for a period of two weeks or a little longer it would be possible for that condition to cause encephalitis but there is no showing that Mr. Boze had a severe cold and sore throat for a period of two weeks or longer.

Upon the foregoing testimony it is the claim of plaintiff-appellant that she had a right to have the issue on her claim of the cause of her decedent's death submitted to a jury.

The court refused to accept the following testimony to which plaintiff objected and excepted which action of

the trial judge is the subject of the third assignment of error.

The witness Eddie Walker had said that he did not see the accident happen "but saw it right after it happened" but how soon after the occurrence does not appear. He states that he inquired of Mr. Boze what had happened and "he said a plank hit him on the back of the neck". This was stricken on motion and the proffer was "He said— he was holding his neck back here like it hurt him (indicating back of neck). I said, where is the plank and he showed it to me." This question was put,

"Q. Go on and tell us what happened.

A. I walked all the way home with him and he complained all the way of it hurting him."

This was stricken.

We are satisfied that the court correctly struck the statement of the witness that Mr. Boze had said to him that a plank hit him on the back of the neck because not of the res gestae. **Cleveland Ry Co. v Mack, 124 Oh St 596, Weaver v Industrial Commission, 125 Oh St 465, Coutillier v Industrial Commission, 126 Oh St 546, Miles v Industrial Commission, 23 Abs 456.** The witness had a right to state, in conjunction with a demonstration of the physical manifestations exhibited by Mr. Boze, that he was holding his neck like it hurt him and also to say that when the witness walked home with Mr. Boze he complained all the way of his neck hurting him.

The general rule is announced in an annotation to Lowery v Jones, 64 A. L. R. 557,

"It is a well settled general rule that, where the bodily or mental feelings of a person are to be proved, the usual and natural expressions and explanations of such person which are spontaneous manifestations of pain, and naturally flow from the pain being suffered by him at the time, are competent and original evidence, which may be testified to by any party in whose presence they are uttered." 20 Am. Jur. 493, 17 O. Jur. 340.

Ohio has followed this rule. See particularly **Cleveland City Ry. Co. v Roebuck, 22 O. C. C., 99, Cincinnati Traction Co. v McKim, 13 Oh Ap 108, Lake Shore & M. S. R. Co. v Yokes, 12 O. C. C. 499.**

The case of **Wetmore v Mell, 1 Oh St 26,** cited by counsel for appellant held that,

"Where an act of a party is admissible in evidence, his declarations at the time, explanatory of that act are also admissible as a part of the res gestae."

The principle upon which the court admitted the declarations in the cited case could not be given application here. This is also true of other cases cited, namely, **Insurance Company v Tobin, 32 Oh St 78** and **Leggett v State, 15 Ohio 283.**

We come then to the important and determinative question in this case, namely, does all of the testimony, lay and expert, taken together, make proof upon which reasonable minds may conclude that in probability the cause of plaintiff's decedent's death was the falling plank which struck him on the back of his head.

We have no hesitancy in answering this question in the affirmative under all of the germane cases. It is evident that there is much factual proof available which does not appear in this record. For instance, the plank which Robert Knight saw strike the plaintiff's decedent and which he clearly could have identified and described is not further described than to say that it was a plank about six feet long, whether a two by four or two by six, does not appear, although, these dimensions are made the subject of an hypothetical question. Nor does the distance from which it fell appear. However, we may assume that a plank is a piece of timber of considerable thickness and heft and

as Mr. Boze was stooped over when struck the plank must have fallen some distance. So that, one lay witness definitely establishes that on the evening of December 22nd or 23rd, 1936, Mr. Boze was struck with a falling plank on the back of the head, which of a necessity is in the region of the base of the brain, and the testimony of this witness and other witnesses proves that from the time that Mr. Boze was struck until he died he continuously suffered from severe pain where the plank struck him, that his condition grew progressively worse, and that the night before he died he suffered all night long with the back of his head, became paralyzed and eventually died from encephalitis which is an inflammation of the nerve tissue about the head or spinal medial. This lay testimony presents a formidable set of facts tending to establish that the cause of the death of Mr. Boze was inflammation of the nerve tissue about the head resulting from the blow from the falling plank. The connecting evidence is found in the statement of Dr. Bausman.

The answer to the hypothetical question put to Dr. Bausman in chief is that it is quite possible that the falling plank caused the condition from which Mr. Boze died. It is our judgment that the term "quite possible" as employed by the doctor is equivalent to "probable". It is not that it is merely possible but that it is "quite possible" reaching by this expression the degree of proof contemplated by "probable". The statement is followed by this further observation, "Even a light blow can produce injury internally in the skull". But if this answer was insufficient the testimony on cross-examination clearly met the requisites of proof. The doctor in this answer said,

"It is my opinion that the most logical explanation of the cause of death was the blow on the back of the head and the resulting encephalitis from that."

This answer in itself was sufficient to carry the case to the jury. Of the doctor's list of the causative factors producing encephalitis no one was present in the evidence except the blow to the back of the head. All other possible causes had been ruled out and found no support whatever from the evidence.

The question here presented is not new with this court. We have in many instances held that, although it is essential that the ultimate proof establish that the cause of injury or death upon which plaintiff's claim is predicated must be made to appear to be probable, in so determining all of the testimony available is to be considered. If the cause of death is such that lay testimony will be probative thereof, then it must be considered in conjunction with the expert evidence. In this case it is not necessary to go to the extent of holding that the lay testimony is sufficient to establish plaintiff's right to go to the jury. If, however, it was, it is of such force and effect that when the nature of the cause of death appeared it would require that the case be submitted even if the medical expert had only expressed an opinion that the blow described was a possible cause of plaintiff's decedent's death.

The Supreme Court in the very latest pronouncement on the subject, **Drakulich v Industrial Commission, 137 Oh St 82, O. L. R.** June 24, 1940, has indicated the class of cases in which expert testimony must establish causal connection between injury and death to the degree of probability.

Judge Hart in the opinion says that there

"was no lay testimony or evidence of other circumstances introduced tending to support the theory that the cancer of the liver (from which plaintiff's decedent died) had its origin in the injury to the decedents back while lifting the casting."

further that the issue presented, namely, the causal relation between the injury and the death,

"presented a field of scientific inquiry where expert medical testimony is required to furnish the answer."

Giving full weight to the statements of the two doctors whose testimony was in the case, neither said more than that there was possible causal relation between the injury and the death.

Counsel for appellee cite **Johnson v Industrial Commission, 28 Abs 241, Hoff v Industrial Commission, 28 Abs 682.** It requires but a cursory examination of the facts in these cases to mark the difference between the questions there presented and the one found in this case. In Johnson v Industrial Commission proof of the causal relation was dependent solely upon medical testimony. The claim there was that the paralysis from which plaintiff's decedent died was caused by an infection from a lacerated thumb. The medical evidence went only to the extent of a possibility of causal connection. In Hoff v Industrial Commission it was the claim that a pre-existing heart disease had been accelerated by a bow upon the head which was a contributing cause of plaintiff's decedent's death. The experts only went to the extent of saying that the injury might "possibly" "could" or "might" contribute to cause the death of plaintiff's decedent.

In **Esmonde v Lima Locomotive Company, 51 Oh Ap 454,** the court held that lay testimony tending to establish causal connection between the accidental injury and the heart condition of which plaintiff complained in conjunction with statements of doctors that the heart condition could have been caused in the manner claimed made a question for the jury. To like effect **Industrial Commission v Holman, 40 Oh Ap 426, Industrial Commission v Bowshier, 41 Oh Ap 79, Industrial Commission v Gillard, 41 Oh Ap 297, Industrial Commission v Schick, 125 Oh St 419, Ohio Malleable Iron Co. v Roe, 15 Abs 289, West v Industrial Commission, 18 Abs 366.**

We shall not attempt to cite cases more at length but are satisfied to say that none has been decided in this court and we know of none in Ohio which announces any principle in contradiction to that which we have applied to the facts in this case. The motion for directed verdict should have been overruled.

The fourth and last assignment of error is predicated upon the action of the trial judge in permitting the defendant to introduce certain exhibits which were produced on the cross examination of plaintiff.

Technically, this was erroneous although it could not have affected the question upon which the motion for directed verdict was sustained.

The authorities cited by appellant support her claim that defendant's case in chief could not be made by the cross examination of plaintiff or her witnesses. Sec. 11420-1 GC, **Legg v Drake, 1 Oh St 286, 292, Babbit v Say, 120 Oh St 177, Bean v Green, 33 Oh St 444, Rustin v Prudential Insurance Co., 27 Oh Ap 466, National Benefit Association v Harding, 7 O. C. C. 438, Phillips v Ohio Farmers Insurance Company, 13 O. C. C. 679.**

The first, second and fourth assignments of error are sustained. The third assignment is sustained in part and overruled in part in accord with this opinion. Judgment reversed and cause remanded for new trial.

GEIGER and BARNES, JJ., concur.